**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| BRITTANY SAMANTHA CURRY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:23-cv-00048-SRW |
| | ) | |
| WOMEN'S EASTERN RECEPTION | ) | |
| DIAGNOSTIC AND CORRECTIONAL | ) | |
| CENTER, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court on the application of self-represented plaintiff Brittany Samantha Curry for leave to commence this action without prepayment of the required filing fee. Having reviewed the application and the financial information submitted in support, the Court finds plaintiff lacks sufficient funds to pay the entire filing fee, and will assess an initial partial filing fee of $1.00. Furthermore, after initial review, the Court will dismiss plaintiff's complaint for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B).

### Initial Partial Filing Fee

A prisoner bringing a civil action is required to pay the full amount of the filing fee. 28 U.S.C. § 1915(b)(1). If the prisoner has insufficient funds in his prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. 28 U.S.C. § 1915(b)(2). The agency

having custody of the prisoner will forward these monthly payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10, until the filing fee is fully paid. *Id.*

Plaintiff has not submitted an inmate account statement as required by 28 U.S.C. § 1915(a)(2). Nevertheless, having reviewed the information contained in her motion, the Court will require plaintiff to pay an initial partial filing fee of $1.00. *See Henderson v. Norris*, 129 F.3d 481, 484 (8th Cir. 1997). If plaintiff is unable to pay the initial partial filing fee, she must submit a copy of her inmate account statement in support of her claim.

### Legal Standard on Initial Review

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed in forma pauperis if it is frivolous, malicious, or fails to state a claim upon which relief can be granted. To state a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id*. at 679. The court must "accept as true the facts alleged, but not legal conclusions or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016); *see also Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 372-73 (8th Cir. 2016) (stating that court must accept factual allegations in complaint as true, but is not required to "accept as true any legal conclusion couched as a factual allegation").

When reviewing a pro se complaint under § 1915(e)(2), the Court must give it the benefit of a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district court should construe the plaintiff's complaint in a way that permits his or her claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015).

### The Complaint

Plaintiff is a Missouri state inmate housed at the Women's Eastern Reception Diagnostic Correctional Center (WERDCC). She brings this action pursuant to §1983 against the following defendants: David Cutt (Investigator, Internal Affairs); Joey Runyon (Investigator); Angela Mesmer (Warden); Derek Hendren (Deputy Warden); Lance McAfee (Functional Unit Manager); James Parrot (CSI), and Natasha Grote (Correctional Officer II). She brings her allegations against Cutt and Runyon in both their individual and official capacities. She does not state in what capacities she is suing the remaining defendants.

Although the complaint is unclear, apparently plaintiff was involved in an investigation of a WERDCC employee for offering and supplying plaintiff and several other offenders with illegal contraband. Based on the correspondence attached to plaintiff's complaint, she wrote a statement that incriminated this employee, COI Wallace, which likely led to his termination. Plaintiff alleges that on November 16, 2022, during the investigation, defendants Cutt and Runyon violated her Fifth Amendment rights by threatening, bribing, and coercing her into writing the statement.

-3-

Apparently plaintiff also incriminated herself in her written statement. She states Cutt and Runyon then used this statement to file disciplinary charges against her.[1]

Plaintiff alleges that during her disciplinary hearing related to this charge, defendant McAfee further violated her due process rights by not allowing her to present witnesses, documentary evidence, and by having filled out his hearing report before plaintiff's hearing was conducted.

After COI Wallace's termination, plaintiff states defendants Cutt, Runyon, Mesmer, McAfee, Parrot and Grote began retaliating against her. "They are angry he got fired and [have] retaliated only on the African American offenders involved[.] [T]he Caucasian offenders have been cleared and haven't received any reprimand."

Seemingly unrelated to these alleged Fifth Amendment violations, plaintiff states that over the past 4.5 years, she has repeatedly been discriminated against because of her race and sexual preference. She alleges defendants Mesmer and Hedren discriminate against African American offenders by "showing and allowing bias treatment, targeting them, giving extensive punishment to African American populace, violating our due process, not recognizing our National Holiday and denying us certain hair products." She also states these officers discriminate against lesbian and transgender offenders.

In addition, plaintiff alleges defendant Parrot harasses her and has instructed correctional officers to falsify evidence and conduct violations against her to justify sending her to segregation.

---

[1] Although plaintiff states in her exhibits that criminal charges were brought against her arising out of the contraband in the prison, a careful review of Missouri Case.net shows no criminal prosecution of plaintiff based on the allegations in her complaint.

Without alleging the defendant involved, she states that she was locked down at some point to collect a urine sample. She states African American offenders are put through the body scanner without reason and they are subjected to aggressive and racist behavior by the officers at WRDCC.

Plaintiff alleges defendant Grote discriminates against her because of her sexual preference by denying her housing with certain women. Plaintiff alleges Grote compiled a list of five offenders that are purportedly plaintiff's girlfriends, and denies plaintiff recreation, showers, or any contact with these women. She states defendants have slandered her by labeling her as an infamous offender because of her appearance, race, sexual orientation, and her past violations involving COI Wallace.

As for her injuries, plaintiff states that she suffers from PTSD, stress, and manic depression. She has been put on suicide watch and suffers anxiety around crowds. She states that she has lost weight and takes two medications for anxiety and sleep. For relief, she asks the Court "to investigate and sanction each person involved to [take] mandatory retraining." She also seeks to "rid the prison of all racist, discriminative, and bias treatment and behavior." She asks for an outside investigation of the claims of racial discrimination. She requests $60,000 in punitive damages from each defendant, which totals $420,000 in punitive damages.

## Discussion

Plaintiff's allegations relate to various conduct by prison staff that allegedly violates various constitutional rights. The Court will look at each activity in turn.

1.     Due Process Rights in Disciplinary Hearing

Plaintiff alleges her due process rights were violated in connection with the investigation of COI Wallace and in plaintiff's subsequent disciplinary hearing. Plaintiff alleges investigators

David Cutt and Joey Runyon coerced her into giving statements that incriminated herself. During her subsequent disciplinary hearing, she states she was not allowed to call witnesses, and one of the officers had completed his disciplinary form before the hearing had started.

As the Eighth Circuit has stated, "[t]he nature of prison disciplinary proceedings compels the courts to give wide latitude to prison officials in the manner in which they conduct these proceedings for they take place in a closed, tightly controlled environment peopled by those who have chosen to violate the criminal law and who have been lawfully incarcerated for doing so." *Ivy v. Moore*, 31 F.3d 634, 635 (8th Cir. 1994). In the administrative segregation context, the determination of whether prison officials denied an inmate due process involves a two-step inquiry. *Williams v. Hobbs*, 662 F.3d 994, 1000 (8th Cir. 2011). First, a plaintiff must demonstrate that she was deprived of life, liberty, or property by government action. *Phillips v. Norris*, 320 F.3d 844, 846 (8th Cir. 2003); *see also Beaulieu v. Ludeman*, 690 F.3d 1017, 1047 (8th Cir. 2012) (stating that a court "need reach the question of what process is due only if the inmates establish a constitutionally protected liberty interest"); and *Singleton v. Cecil*, 155 F.3d 983, 987 (8th Cir. 1998) (explaining that to claim a due process violation, plaintiff has to be deprived of either life, liberty, or property, otherwise "it does not matter whether one has received due process or not"). If a plaintiff can establish that a life, liberty, or property interest exists, the process necessary to protect that interest must be determined. *Williams*, 662 F.3d at 1000.

As life or property is not at issue in this case, plaintiff must identify a liberty interest to sustain a due process claim. *See Phillips*, 320 F.3d at 847. To assert a due process violation based on a liberty interest of avoiding administrative segregation, "an inmate must show that the segregation created an atypical and significant hardship on [her] in relation to the ordinary

incidents of prison life to demonstrate that [her] liberty interest was curtailed." *Rahman X v. Morgan*, 300 F.3d 970, 973 (8th Cir. 2002). The Eighth Circuit has stated that an assignment to disciplinary or administrative segregation is not, in and of itself, an atypical and significant hardship. *See Portley-El v. Brill*, 288 F.3d 1063, 1065 (8th Cir. 2002) (stating that Eighth Circuit has "consistently held that administrative and disciplinary segregation are not atypical and significant hardships under *Sandin*"); *Wycoff v. Nichols*, 94 F.3d 1187, 1190 (8th Cir. 1996) (stating that plaintiff "has no liberty interest in avoiding administrative segregation unless the conditions of his confinement present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest").

Here, plaintiff has not alleged that the conditions of her confinement in administrative or disciplinary segregation were atypical and significant. Thus, plaintiff has not established any liberty interest in avoiding administrative segregation. Because plaintiff has not established a constitutionally protected liberty interest in avoiding administrative segregation, the court need not reach the question of what process was due. *See Beaulieu*, 690 F.3d at 1047. For this reason, plaintiff's allegations regarding the violation of her due process rights will be dismissed.

2.      Harassment and Retaliation Claims

Plaintiff also alleges defendants subjected her to harassment. She states defendant Parrot harasses her by instructing COs of lower rank to "falsify evidence and conduct violations to lock me down in segregation." She also alleges generally that defendants "are angry [COI Wallace] got fired and [have] retaliated only on the African American offenders involved. [T]he Caucasian offenders have been cleared and haven't received any reprimands."

Plaintiff's allegations of harassment specific to defendant Parrot are insufficient to raise

her right to relief above the speculative level as required under *Iqbal*, 556 U.S. at 678. She has not alleged any factual content from which the Court could find Parrot and other COs have falsified any information that led to conduct violations. For example, plaintiff has not alleged the names of the COs, the conduct violations at issue, the falsified facts, or the dates on which this conduct occurred. To the extent plaintiff is asserting defendants harassed or retaliated against other African American inmates, she does not meet the jurisdictional requirement of standing. Generally, to satisfy the standing requirement, a plaintiff "must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499 (1975). Because plaintiff does not have standing to assert claims of harassment and retaliation on behalf of other offenders, these claims will be dismissed.

Furthermore, plaintiff's complaints about lesbian couples being housed separately are not viable § 1983 claims because an inmate has no right to a certain cell or housing assignment. "Among the liberties which prisoners do not enjoy is choice of cells. Transfer within the prison, or to another prison, is within the discretion of prison officials." *Lyon v. Farrier*, 727 F.2d 766, 768 (8th Cir. 1984) (internal citations omitted); *see also Allen v. Purkett*, 5 F.3d 1151, 1153 (8th Cir. 1993) (stating that prisoner "had no right . . . to be housed in a certain barrack or housing unit, or with certain inmates").

3.   The PLRA Requires Physical Injury

In addition, plaintiff's complaint fails to state an actionable claim under the Prison Litigation Reform Act (PLRA) for compensatory damages. The PLRA states: "No Federal civil action may be brought by a prisoner confined in any jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or

-8-

the commission of a sexual act." 42 U.S.C. §1997e(e); *see also McAdoo v. Marin*, 899 F.3d 521, 525 (8th Cir. 2018) ("We interpret the PLRA to require more than a de minimis physical injury."). Plaintiff describes her injuries as mental or emotional, including PTSD, manic depression, stress, anxiety, and suicidal ideation. She has not alleged the required physical injury under the PLRA.

Nor is plaintiff's claim of slander and defamation actionable here for compensatory damages. *See Ellingburg v. Lucas*, 518 F.2d 1196, 1197 (8th Cir. 1975) (stating that an inmate cannot recover damages for defamation under §1983 "because a defamed person has not been deprived of any right, privilege or immunity secured to him by the Federal Constitution or laws of the United States").

4.   Official Capacity Claims Against Defendants Mesmer, Hedren, McAfee, Parrot, and Grote

Finally, plaintiff's claims against defendants Mesmer, Hedren, McAfee, Parrot, and Grote must be dismissed for the additional reason that plaintiff has not stated in what capacity she is suing them. Because plaintiff does not specify the capacity in which she sues these defendants, the Court interprets the complaint as including only official capacity claims. *See  Egerdahl v. Hibbing Community College*, 72 F.3d 615, 619 (8th Cir. 1995). In an official capacity claim against an individual, the claim is actually "against the governmental entity itself," in this case, the State of Missouri. *See White v. Jackson*, 865 F.3d 1064, 1075 (8th Cir. 2017). Plaintiff has not alleged that the State of Missouri is liable for any of the alleged conduct. *See Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1075 (8th Cir. 2016). Moreover, in the absence of a waiver, the Eleventh Amendment bars suit against a state official acting in his or her official capacity. *Morstad v. Dep't of Corr. & Rehab.*, 147 F.3d 741, 744 (8th Cir. 1998).

-9-

For all of these reasons, plaintiff has not alleged a plausible constitutional claim against defendants. The Court will dismiss her complaint for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B).

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's application to proceed in the district court without prepaying fees and costs is **GRANTED**. [ECF No. 2]

**IT IS FURTHER ORDERED** that plaintiff must pay an initial partial filing fee of $1.00 within **thirty (30) days** of the date of this order. Plaintiff is instructed to make her remittance payable to "Clerk, United States District Court," and to include upon it: (1) her name; (2) her prison registration number; (3) the case number; and (4) the statement that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that plaintiff's complaint is **DISMISSED without prejudice** for failure to state a claim upon which relief may be granted. 28 U.S.C. § 1915(e)(2)(B).

An Order of Dismissal will accompany this Opinion, Memorandum and Order.

Dated this 2nd day of February, 2024.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE